J-S19001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2927 EDA 2019 |

Appeal from the Order Entered September 17, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001715-2018

BEFORE: BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:            **FILED AUGUST 11, 2020**

T.R. ("Mother")[1] appeals from the order entered September 17, 2019, that changed the permanency goal of her son, S.R., born in July 2006, to permanent legal custody ("PLC"). After careful review, we vacate the order and remand for a new permanency review hearing.

S.R. was taken into the custody of the Philadelphia Department of Human Services ("DHS") on July 23, 2018, via an order of protective custody ("OPC"), following receipt of a Child Protective Services ("CPS") report. App. For Emergency Protective Custody, 7/23/18, at 1. The report alleged that Mother had been engaged in a domestic dispute with her paramour, and became angry at S.R. for playing a game on his phone. *Id*. Mother hit S.R. with an extension cord and left a laceration on his arm. *Id*. Mother was

_____

[1] S.L. (Father) did not separately appeal the September 17, 2019 order, and is not a party to the instant appeal.

arrested and charged with aggravated assault. *Id*. A shelter care hearing was held on July 25, 2018. *See* Shelter Care Order, 7/25/18, at 1. Mother was incarcerated at Riverside Correctional Facility, and S.R. was placed in kinship foster care with his maternal aunt. *Id*.; *see also* N.T., 9/17/19, at 7.

S.R. was adjudicated dependent on September 26, 2018. *See* Order of Adjudication and Disposition, 9/26/18, at 1. At that time, S.R. was in kinship foster care with Tr.R. ("Grandmother"), his maternal grandmother, who was granted physical custody and temporary legal custody of S.R. *Id*. The order is silent as to any goals, single case plan ("SCP") objectives or services regarding Mother, and provided no further objectives as to reunification. The order identified S.R.'s permanent placement goal as "remain with the guardian." *Id*. at 2.

The court held a permanency review hearing on January 31, 2019, at which time S.R. remained in the physical and temporary legal custody of Grandmother. *See* Permanency Review Order, 1/31/19, at 1. Mother's visitation remained suspended pending resolution of the criminal matter. *Id*. Again, the order did not provide objectives or services for Mother, and did not make findings concerning Mother's progress. *Id*. The order notes that Community Umbrella Agency ("CUA") was to continue attempting to locate Father and set up SCP objectives. *Id*. at 2. S.R.'s permanent placement plan was identified as "remain with the parent or guardian." *Id*. at 1.

The court held a permanency review hearing on June 20, 2019, at which time S.R. was under the protective supervision of DHS, but remained in the

physical custody of Grandmother. *See* Status Review Order, 6/20/19, at 1. The order referred Mother to the Achieving Reunification Center ("ARC") for parenting and domestic violence. *Id*. at 2. The order identified S.R.'s permanent placement goal as "remain with parent or guardian." *Id*. at 1.

The permanency review hearing scheduled for September 12, 2019, before hearing officer Vincent Giusini was continued after a request that the matter be heard by a judge. *See* Recommendation – Status Review, 9/12/19, at 1. Mother's counsel was not present at the hearing, and Mother did not attend in person, although it appears substitute counsel was present on Mother's counsel's behalf. *Id*. The order listed the next court date scheduled for September 17, 2019. *Id*.

On September 17, 2019, the court held a permanency review hearing. N.T., 9/17/19, at 1. At that hearing, counsel for DHS requested the court to grant unsubsidized PLC to Grandmother.[2] *Id*. at 3. Counsel for DHS stated that the agency sent notice to Mother at two addresses via process server. *Id*. at 4. At the first address, "[i]t was delivered to the front door on September 16 of 2017," and at the second, "it was unable to serve at that location. It is my understanding that CUA saw mom [in court today] and she was aware of the hearing." *Id*. Mother's counsel responded,

> Your Honor, I have no objection to the service of the subpoena for the listing, unfortunately, I'm not sure that my client was made aware that the Department was requesting unsubsidized PLC

_____

[2] Janice Sulman, Esquire, Mother's counsel, asked whether the petition was filed of record, and counsel for DHS averred that the agency does not normally file petitions for unsubsidized PLC. *Id*. at 4-5.

today, so I don't know what to do about that particular fact. I don't have her position. She did stop in this morning. She indicated she had to go to some other type of hearing at 16th and [M]arket and has not returned. She's not here for me to get a position for Your Honor.

*Id*. at 5-6. Despite counsel's representations, the court found actual service on Mother. *Id*. at 6.

Adrianna Jenkins, NorthEast Treatment Center ("NET") CUA case manager, testified that S.R. is currently placed with Grandmother, who has had temporary legal custody of him for almost two years. *Id*. at 6. The case itself was open for fourteen months at the time of the hearing, and was originally opened due to inappropriate physical discipline of S.R. by Mother. *Id*. at 6, 8. At the time of the hearing, Mother's criminal charges were still pending, and she was not scheduled for trial until February 2020. *Id*. at 8. There was a stay-away order against Mother with respect to S.R. that had been in place for the life of the case, and Mother was not allowed visits. *Id*. at 9.

Ms. Jenkins testified that S.R. was doing well in his grandmother's home, and was receiving mental health therapy. *Id*. at 7. S.R. was medically and dentally up to date and was not in need of other services. *Id*. S.R. did not have any issues in school. *Id*. at 8. Ms. Jenkins testified that she had spoken with S.R. regarding his preferences and that S.R. would like to remain with his grandmother. *Id*.

Ms. Jenkins noted that Mother's objectives were "to complete parenting class and domestic violence counseling." *Id*. at 9. Mother was currently

engaged in a parenting class and a referral had been made for domestic violence, but "[Mother] said that nobody reached out to her." *Id*. Ms. Jenkins believed that Grandmother should have PLC of S.R., because Grandmother was an adequate caregiver and S.R. did not have a relationship with, or want to return to, Mother. *Id*. at 10. Ms. Jenkins noted that she had spoken previously with Mother about PLC and that Mother was not in favor of this option. *Id*. at 11. After the agency decided to pursue PLC for S.R., two meetings were scheduled with Mother, but Mother canceled both of them. *Id*. at 11.

Grandmother testified that she was currently the caregiver for S.R. and willing to accept PLC for him. *Id*. at 12. Grandmother stated she was willing to meet S.R.'s educational, physical, and medical needs until he reached the age of eighteen. *Id*. at 12-13.

The following exchange then took place:

**MS. SULMAN**: Your Honor, I don't know my client's position.

**THE COURT**: I'll be signing off on the record.

**MS. SULMAN**: Your Honor, I do know that she had begun working on some of the goals even though she was not permitted to speak to her son, and I don't know that she would like to not have the opportunity to reunify with him and to have the services, Your Honor, so I can't agree on her behalf to this today.

**THE COURT**: She should have stayed to voice her position in open court. She was here. She waived her right to be present, she waived her ability to object. I can't imagine what's more important than your child, apparently[,] she had something more important.

- 5 -

**MS. SULMAN**: Your Honor, my client wasn't aware that we were considering discharging this case today, Your Honor.

**THE COURT**: Of no moment, she was supposed to be here, she was here, she walked out. Thank you all. Good luck, grandmother.

N.T., 9/17/19, at 13-14. S.R.'s child advocate did not ask questions of either witness, nor present his position to the court.

At the conclusion of the hearing, the court terminated court supervision of S.R. and discharged his dependency. *See* N.T., 9/17/19, at 13; *see also* Order for Termination of Court Supervision, 9/17/19, at 1. The court found that reunification and/or adoption was not a viable goal, and that it was in the best interests of S.R. to grant unsubsidized PLC to Grandmother. *See* Order for Termination of Court Supervision, 9/17/19, at 1.

Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Mother raises the following issues for our review:

1. Did the trial court err as a matter of law and abuse its discretion when it entered an order changing the permanency goal for [S.R.] in the absence of a goal change petition?

2. Did the trial court err as a matter of law or abuse its discretion where it changed the permanency goal of [S.R.] to permanent legal custody?

Mother's brief at 3.

We review dependency cases for an abuse of discretion. *See In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). On review,

we are bound by the facts as found by the trial court unless they are not supported in the record. Furthermore, in a change of goal

- 6 -

proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interest and not those of his or her parents.

At each review hearing concerning a child who has been adjudicated dependent and removed from the parental home, the trial court must consider: the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

These statutory mandates clearly place the trial court's focus on the best interests of the child.

In addition[, a]lthough bound by the facts as found by the trial court and supported by the record, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for an abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's factfinding function because the court is in the best position to observe and rule on the credibility of the parties and the witnesses.

*In re H.V.*, 37 A.3d 588, 593 (Pa.Super. 2012) (quoting *In re K.J.*, 27 A.3d 236, 241 (Pa.Super. 2011)) (alterations in original).

Mother first argues that the court erred when it changed the permanency goal of S.R. without filing a goal change petition. Mother's brief at 15. Mother contends that, because she never received notice of the potential goal change hearing, she did not have an opportunity to respond, and was accordingly deprived of due process. *Id*. Counsel for DHS filed a

- 7 -

letter in this Court noting that the agency would not be filing a brief, and agreed with Mother that the order granting Grandmother permanent legal custody should be vacated, and the matter should be remanded for a new permanency hearing. *See* Letter, 2/21/20, at 1.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is de novo and the scope of review is plenary." *Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa.Super. 2017). "Due process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues." *Brooks–Gall v. Gall*, 840 A.2d 993, 997 (Pa.Super. 2003) (recognizing that dependency proceedings implicate due process concerns). It is well settled that "procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *S.T. v. R.W.*, 192 A.3d 1155, 1161 (Pa.Super. 2018); *see also J.N.F.*, 887 A.2d 775, 781 (Pa.Super. 2005). "The right of a litigant to in-court presentation of evidence is essential to due process; in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *M.O. v. F.W.*, 42 A.3d 1068, 1072 (Pa.Super. 2012).

With regard to the statute's notice requirements, our Court has observed that "there is no statutory requirement that a juvenile court must

provide express notice that it is contemplating a goal change." *In Interest of L.T.*, 158 A.3d 1266, 1278–79 (Pa.Super. 2017). Specifically,

> the Juvenile Act does not discuss goal change hearings or mention the phrase "goal change" at all. *In In re R.J.T.*, [9 A.3d 1179, 1183 n. 6 (Pa. 2010)], our Supreme Court highlighted that the phrase "goal change," is used as a term of art that is synonymous with the juvenile court's mandated determination regarding "the continuation, modification or termination of placement" that a juvenile court must render pursuant to 42 Pa.C.S. § 6351(f), (f.1), and (g) at the conclusion of every permanency hearing. *Id*. ("We conclude that an order to continue, modify, or terminate the current placement, as required by the statute, is synonymous with a decision to continue or change the permanency plan goal.").

*Id*. We further observed that "§ 6351 of the Juvenile Act directs that a juvenile court not only consider the appropriateness and feasibility of a child's current goal during the permanency review hearings, it also mandates that the court enter an order addressing whether to continue, modify or terminate placement. *See* 42 Pa.C.S. § 6351(f)(4), (f.1), and (g)." *Id*.

However, while DHS was not required to file a goal change petition, and the court was not required to provide express notice that a goal change was contemplated, that does not end our due process inquiry. We note, initially, that the trial court did not address Mother's due process concerns in its opinion, and that Mother's argument is focused on the lack of notice given to her. The court, additionally, did not address the issue of service or notice of the hearing. As noted, *supra*, the hallmark of due process is notice and the opportunity to be heard. *S.T.*, 192 A.3d at 1161.

The Pennsylvania Rules of Juvenile Court Procedure provide:

**A. Filings**

(1) All orders and court notices shall be transmitted promptly to the clerk of courts for filing. Upon receipt by the clerk of courts, the order or court notice shall be time-stamped promptly with the date of receipt.

(2) All orders and court notices shall be filed in the official court record.

**B. Service.**

(1) **A copy of any order or court notice shall be served promptly on each party's attorney**, and the party, if unrepresented.

(2) The clerk of courts shall serve the order or court notice, unless the president judge has promulgated a local rule designating service to be by the court or its designee.

(3) Methods of service. Service shall be:

(a) in writing by:

(i) personal delivery to the party's attorney, and if unrepresented, the party;

(ii) mailing a copy to the party's attorney or leaving a copy for the attorney at the attorney's office;

(iii) in those judicial districts that maintain in the courthouse assigned boxes for counsel to receive service, leaving a copy for the attorney in the attorney's box;

(iv) sending a copy to an unrepresented party by first class mail addressed to the party's place of business, residence, or detention;

(v) sending a copy by facsimile transmission or other electronic means if the party's attorney, and if unrepresented, the party has filed written request for this method of service or has

included a facsimile number or an electronic address on a prior legal paper filed in the case;

(vi) delivery to the party's attorney, and if unrepresented, the party by carrier service; or

(b) orally in open court on the record.

Pa.R.J.C.P. 1167 (emphasis added). We further note Rule 1166(C), which provides that docket entries "shall include, at a minimum, the following information: "the date and manner of service of the order or court notice[.]" Pa.R.J.C.P. 1166(C)(8)(c).

Pa.R.J.C.P. 1600 provides, in relevant part, that with regard to permanency hearings,

**A. Summons.** At least fifteen days prior to the permanency hearing, the court may issue a summons compelling any party to appear for the permanency hearing.

**B. Order appearance.** The court may order the person having the physical custody or control of the child to bring the child to the hearing.

**C. Requirements.** The general summons procedures of Rule 1124 shall be followed.

*Comment*: Section 6335 of the Juvenile Act provides that the court is to direct the issuance of a summons to the parent, guardian, or other custodian, a guardian ad litem, and any other persons as appear to the court to be proper and necessary parties to the proceedings. 42 Pa.C.S. § 6335(a).

Other persons may be subpoenaed to appear for the hearing. See 42 Pa.C.S. § 6333.

Pa.R.J.C.P. 1600.

The general summons procedure provided by Pa.R.J.C.P. 1124 is as follows:

> **A. Requirements of the summons.** The summons shall:
>
>> (1) be in writing;
>>
>> (2) set forth the date, time, and place of the hearing;
>>
>> (3) instruct the parties about the right to counsel; and
>>
>> (4) give a warning stating that the failure to appear for the hearing may result in arrest.
>
> **B. Method of Service.** The summons shall be served:
>
>> (1) in-person; or
>>
>> (2) by certified mail, return receipt and first-class mail.
>
> **C. Exception to service.** If service cannot be accomplished pursuant to paragraph (B), the party may move for a special order directing the method of service. The motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the person sought to be served and the reasons why service can not be made.

Pa.R.J.C.P. 1124.

Finally, with regard to notice of permanency hearings, the Rules of Juvenile Court Procedure provide:

> A. **At least fifteen days prior to the hearing, the court or its designee shall give notice of the permanency hearing** to:
>
>> 1) all parties;
>>
>> 2) the attorney for the county agency;
>>
>> 3) the child's attorney

4) the guardian's attorney;

5) the parents, child's foster parent, preadoptive parent, or relative providing care for the child;

6) the court appointed special advocate, if assigned;

7) the educational decision maker, if applicable; and

8) any other persons as directed by the court.

B. If a party intends to request a goal change from reunification, then either the notice shall state this purpose or the party shall give separate notice of the intended goal change in accordance with paragraph (A).

> *Comment*: Given the significance of discontinuing the goal of reunification, the requirement of paragraph (B) is to ensure that parties, counsel, and interested persons have notice of the purpose of the hearing and are able to prepare for and attend the hearing.

Pa.R.J.C.P. 1601 (emphasis added). Rule 1345(A)(2) provides, in relevant part:

Clerk of courts' duties. [T]he clerk of courts shall docket a written motion, notice or document when it is received and record the time of filing in the docket. The clerk of courts promptly shall transmit a copy of these papers to such person as may be designated by the court.

Pa.R.J.C.P. 1345(A)(2).

Finally, the Philadelphia County Family Division Rules provide that parents "shall receive written notice of dispositional review hearings and their attendance shall be required unless the Court has good cause shown to excuse their attendance." **See** Phila. Co. Family Div. Rule 1698.

Following the May 15, 2019, permanency review hearing, the court provided notice that the next permanency review hearing would be held on June 20, 2019. **See** Notice of Hearing, 5/15/19, at 1. The docket indicates that notice was served upon Mother's attorney by electronic service.

However, following the June 20, 2019 hearing, no separate notice appears of record, nor does the docket reflect that notice was served on any party. Rather, the June 20, 2019 permanency review order provides that the next hearing was scheduled for September 12, 2019, and includes a notation that copies were given to Mother's counsel. **See** Permanency Review Order, 6/20/19, at 2. The order does not indicate that any party was served, or the manner of service. **Id**.

The September 12, 2019 status review order, which continued the permanency hearing to September 17, 2019, indicates that Mother's counsel was "not present/excused" but that "all parties present served." **See** Status Review Order, 9/12/19, at 1. The order notes "copies to: . . . Mother's counsel Janice M. Sulman (NP/Excused) . . (ALL PARTIES PRESENT SERVED)." Again, the docket does not reflect that a hearing notice was served on any party, and such notice is not filed of record. **See** Pa.R.J.C.P. 1345(A)(2); **see also** Pa.R.J.C.P. 1167(B) ("A copy of any order or court notice shall be served promptly on each party's attorney, and the party, if unrepresented. The clerk of courts shall serve the order or court notice, unless the president judge has promulgated a local rule designating service to be by the court or its designee."); **see also** Pa.R.J.C.P. 1166(C) (docket entries shall include, at a

minimum, the following information: "the date and manner of service of the order or court notice[.]"

Neither party has indicated whether the president judge has promulgated a local rule designating DHS as its designee to provide service to the parties, however; even if that were the case, the attempted service is defective as well. Counsel for DHS stated that the agency had attempted to serve Mother at two addresses. N.T., 9/17/19, at 4. However, counsel's testimony was that service at the first address was "delivered to the front door on September 16 of 2017,"[3] and at the second address "it was unable to serve at that location. It is my understanding that CUA saw mom [in court today] and she was aware of the hearing." *Id*. Although Mother's counsel stated that she had no objection to the service of the subpoena, Mother's counsel denied having knowledge of the purpose of the hearing, and the date of service does not meet the 15-day notice requirement in Rule 1601. *Cf. In re J.F.*, 27 A.3d 1017 (Pa. Super. 2011) (stating that "[b]ut for the particular circumstances of this case, we would find the lack of notice to be a fatal defect requiring remand[;]" and where the record reflected that the foster mother had attended the hearing and was aware of the purpose of the hearing, and a meaningful hearing was conducted). Although DHS' counsel represented that service had been perfected, this is insufficient to fulfill the notice requirement where there is no affidavit of service or even indication of service contained in

_____

[3] It appears that counsel may have inadvertently misstated the year of service, as the instant case was not opened until 2018.

the record. *See In re J.F.*, *supra* at 1024, n.10 (this Court may only consider items included in the certified record on appeal; those items that do not appear of record do not exist for appellate purposes).

It is additionally clear from the record that Mother was unaware that she must be present for the hearing. As noted above, the court may issue summons requiring the presence of necessary parties. Pa.R.J.C.P. 1600. The rules provide that the summons must be in writing and advise the recipient of the consequences of their failure to attend the hearing. Pa.R.J.C.P. 1124. As noted, above, there was no notice, summons, or affidavit of service of record. Counsel represented to the court that Mother was not present and had gone to attend another court hearing, and that Mother was not aware that the court was considering discharging the case, particularly as Mother had only just begun receiving services. N.T., 9/17/19, at 5-6, 13-14. We further note that both DHS and Mother agree that the matter should be remanded for a new hearing. The parties filed a joint stipulation in this Court and an application for remand on February 6, 2020.[4] *See* Application for Remand, 2/6/20, at 1.

The Pennsylvania Rules of Juvenile Court Procedure require notice of a permanency hearing to be given at least fifteen days in advance. Pa.R.J.C.P. 1601. That notice must be filed of record and the docket must indicate the manner of service. Pa.R.J.C.P. 1166-67; Pa.R.J.C.P.

---

[4] The request was denied because Mother's counsel had not served the notice of appeal on Grandmother. However, based upon our disposition of this appeal, we need not determine whether Grandmother was or was not served.

1345(A)(2). Additionally, the Philadelphia County Family Division rules require that parents receive written notice of disposition review hearings, and are required to attend the hearings. **See** Phila. Co. Family Div. Rule 1698.

Here, Mother was not notified at least fifteen days in advance of the hearing, and, indeed, did not attend. We conclude, therefore, that the record does not support a finding of "adequate notice." **In re J.N.F.**, **supra**. We vacate the trial court's order and remand for an expedited permanency review hearing.[5]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2020

_____

[5] Given our disposition of Mother's appeal, we need not address her other issues.